2 P.3d 968 (2000)
101 Wash.App. 43
Nancy HOGAN, a single person, Respondent and Cross-Appellant,
v.
SACRED HEART MEDICAL CENTER, a Washington Corporation, and John and Jane Does A-F, Appellants.
No. 17822-6-III.
Court of Appeals of Washington, Division 3, Panel Five.
February 15, 2000.
As Amended on Grant of Reconsideration June 6, 2000.
*969 Mary H. Spillane, Williams, Kastner & Gibbs, Seattle, and Richard E. Hayes, Paine, Hamblen, Coffin, Brooke & Miller, Spokane, for Appellants.
Mark D. Kamitomo, Spokane, Charles K. Wiggins, Bainbridge Island, for Respondent.
KURTZ, C.J.
Nancy Hogan underwent surgery for a torn rotator cuff at Sacred Heart Medical Center. Her anesthesiologist mistakenly administered an interscalene block directly into her spinal cord and, as a result, she suffers from severe and disabling injuries. Ms. Hogan settled with her anesthesiologist, Dr. Stuart Fealk, and Physicians Anesthesia Group, P.S., for his insurance policy limits of $2 million. Later, she sued Sacred Heart alleging negligence and lack of informed consent. Prior to trial, Ms. Hogan expanded the scope of her lawsuit against the hospital to include vicarious liability for Dr. Fealk's acts. After a trial, the jury awarded Ms. Hogan $7,328,190.99, found that Dr. Fealk was an agent of Sacred Heart, and apportioned liability between the doctor and the hospital at 60 percent and 40 percent respectively.
Ms. Hogan and the hospital presented judgments in different amounts to the trial court. Sacred Heart argued that it was liable for a judgment in an amount equal to 40 percent of the total jury verdict. The hospital reasoned that Ms. Hogan released the hospital for its vicarious liability for the acts of Dr. Fealk when it released him as a result of the settlement. After a reasonableness hearing regarding Ms. Hogan's settlement with Dr. Fealk and the anesthesia group, the trial court awarded Ms. Hogan a judgment against the hospital in the amount of the jury award, less an offset for the $2 million settlement. We conclude that if Dr. Fealk and the anesthesia group were solvent at the time of the settlement, Sacred Heart was released from its vicarious liability for the acts of Dr. Fealk. We remand the matter to the trial court for an evidentiary hearing to determine whether Dr. Fealk and Physicians Anesthesia Group, P.S., were solvent at the time of the settlement.

FACTS
Nancy Hogan underwent surgery at Sacred Heart Medical Center in Spokane, Washington, to repair a torn rotator cuff. Because general anesthesia sometimes produces nausea, Ms. Hogan was scheduled to receive an interscalene block, which minimizes postoperative pain and nausea.
Beth Naser, a certified registered nurse anesthetist employed by Sacred Heart, administered the general anesthesia. Dr. Fealk, an anesthesiologist employed by Physicians Anesthesia Group, P.S., administered the interscalene block. The Physician's Group had an agreement with Sacred Heart under which the group's anesthesiologists provided services to the hospital as independent contractors.
The interscalene block was administered postoperatively while Ms. Hogan was still under the effects of the general anesthesia. The block was to be injected between the scalene muscles. However, Dr. Fealk mistakenly placed the needle into Ms. Hogan's spinal cord. Ms. Hogan immediately experienced pain, weakness and sensory deficits in her upper body. Shortly thereafter, she was diagnosed as suffering from degeneration of her spinal cord. Ms. Hogan was not able to keep her job as a registered nurse, suffered memory loss and lost the use of her right arm and hand. Eventually, Ms. Hogan's right arm had to be amputated.
*970 In 1995, Ms. Hogan settled with Dr. Fealk for his insurance policy limits of $2 million, releasing him and his group from further liability. At that time, Ms. Hogan had not considered the potential liability of the hospital. She believed the settlement would adequately compensate her. However, Ms. Hogan's condition worsened. The atrophy of her spinal cord did not repair itself, but instead it grew so extensive that it threatened to consume the entire thickness of the spinal column, which would render her a quadriplegic, dependent upon a ventilator. Ms. Hogan's expert, Dr. John D. White, examined her in 1997 and predicted it was likely she would become a quadriplegic and dependent on ventilator care by the year 2000.
Ms. Hogan filed suit against Sacred Heart. The alleged liability of the hospital was based upon the acts of its employee, Ms. Naser, its failure to prevent the injury to Ms. Hogan, and lack of informed consent. The complaint did not allege that the hospital was vicariously liable as principal for the acts of Dr. Fealk as its agent. However, shortly before trial, it became evident that Ms. Hogan intended to pursue a claim based upon the hospital's vicarious liability for the acts of the anesthesiologist. It also became apparent that the hospital would defend this claim by arguing that it was released from its liability as principal from Ms. Hogan's settlement with Dr. Fealk. Before trial, Ms. Hogan asked the court to rule that the release of Dr. Fealk did not release Sacred Heart from vicarious liability for his conduct because the settlement was for policy limits and the damages exceeded that amount. Additionally, she asked the court to rule that Sacred Heart had waived any issue of release by failing to plead it.
Sacred Heart objected that Ms. Hogan had not pleaded the issue of Dr. Fealk's agency. Therefore, the hospital argued that it had no reason to plead release as an affirmative defense. The hospital also noted that in her answer to interrogatories, Ms. Hogan had not identified the hospital's vicarious liability for the acts of Dr. Fealk as one of its claims against Sacred Heart. Finally, the hospital stated that Ms. Hogan's motion was premature because it had not yet been established that Dr. Fealk was an agent of Sacred Heart.
Over Sacred Heart's objections, the trial court concluded that, based on the fact that Dr. Fealk had settled for policy limits which Ms. Hogan's alleged damages far exceeded, Ms. Hogan would be allowed to address the issue of Dr. Fealk's agency in her opening statement. The court further stated that the remaining issues would be a matter for "legal argument at the appropriate point in time."
The jury returned a special verdict form, in which it found that (1) Dr. Fealk was the apparent agent of Sacred Heart; (2) Both Dr. Fealk and Sacred Heart through Beth Naser were negligent; (3) Both Dr. Fealk's and Sacred Heart's negligence were a proximate cause of injury to Ms. Hogan; (4) Ms. Hogan's total damages were $7,328,190.99; and (5) Dr. Fealk was 60 percent at fault and Sacred Heart was 40 percent at fault for the injuries.
PRESENTATION OF PROPOSED JUDGMENTS.
After trial, both parties presented their proposed judgments. Ms. Hogan sought entry of a judgment for the total amount of the jury award, or $7,328,190.99. Sacred Heart sought entry of judgment in the amount of $2,931,276.40, which represented its 40 percent liability attributable to Ms. Naser.
By letter ruling dated June 25, 1998, the court concluded that (1) it had ruled on vicarious liability before trial and would not address that issue again; (2) offset could not be addressed because no reasonableness hearing had been held on the Dr. Fealk settlement; (3) because the jury found Dr. Fealk was an agent of Sacred Heart, the hospital was liable for his conduct; (4) Sacred Heart may be entitled to an offset of the settlement amount, but would not be entitled to a percentage reduction of the 60 percent attributable to his conduct. The court indicated that it would hold Ms. Hogan's proposed judgment for one week pending a motion for a reasonableness hearing. If no such motion was received, the trial court indicated its intention to sign Ms. Hogan's proposed judgment.
*971 THE REASONABLENESS HEARING.
Sacred Heart moved for a reasonableness hearing regarding the settlement with Dr. Fealk and his group. Ms. Hogan filed a brief supporting the reasonableness of the settlement. Sacred Heart filed declarations from Dr. Fealk, individually, and from Dr. Thomas Boubel, on behalf of Physicians Anesthesia Group, P.S., which state both were solvent exclusive of the limits of the liability insurance policy.
The trial court found that the settlement was reasonable because (1) it was for policy limits and close to one of the highest awards ever given in Spokane at the time; (2) it took into account liability and Ms. Hogan's pain and suffering and loss of limb; (3) it encompassed the "then known main tort feasor"; and (4) it took into account Ms. Hogan's needs as anticipated at that time. The court also concluded that Ms. Hogan was not required to look further for other assets at the time of settlement, and even if there were other assets, the settlement was reasonable. The court entered an order determining that the settlement was reasonable.
THE JUDGMENT AND POSTJUDGMENT.
The court ultimately entered judgment in the amount of $5,328,190.99, which represents the jury award, with an offset of $2 million for the settlement made with Dr. Fealk.
Sacred Heart moved for reconsideration of the judgment, arguing that the issue of the effect of the release of a solvent agent was never considered by the court. Ms. Hogan filed a cross-motion for reconsideration, arguing that because Sacred Heart did not plead offset as an affirmative defense in its answer, it had waived the argument. The court denied both motions. Sacred Heart appeals.

ANALYSIS
Did Ms. Hogan's release of Dr. Fealk, an agent, release Sacred Heart, his principal, from vicarious liability for Dr. Fealk's acts and omissions?
Where the relevant facts are undisputed, and the only questions are questions of law, review is de novo. See, e.g., Deatherage v. Examining Bd. of Psychology, 134 Wash.2d 131, 135, 948 P.2d 828 (1997); Tollycraft Yachts Corp. v. McCoy, 122 Wash.2d 426, 431, 858 P.2d 503 (1993). In this case, the relevant facts are not in dispute. Rather, the parties dispute only the legal effect of those facts. As such, the standard of review is de novo.
The release of an agent as a result of a reasonable settlement may extinguish a vicarious liability claim against the principal. Glover v. Tacoma Gen. Hosp., 98 Wash.2d 708, 658 P.2d 1230 (1983), overruled on other grounds by Crown Controls, Inc. v. Smiley, 110 Wash.2d 695, 756 P.2d 717 (1988). After a plaintiff has settled with an agent, the trial court may discharge a principal if the court approves the settlement as reasonable. Id. at 722. However, in that situation, the principal is released by operation of law only where the agent is deemed "solvent." Vanderpool v. Grange Ins. Ass'n, 110 Wash.2d 483, 487, 756 P.2d 111 (1988) (citing Glover, 98 Wash.2d at 722, 658 P.2d 1230). If the agent is deemed to be insolvent or incapable of making the plaintiff whole, the principal is entitled only to an offset of the settlement amount against any judgment it incurs. RCW 4.22.060(2); Glover, 98 Wash.2d at 723-24, 658 P.2d 1230.
This reasoning is based on the concept that when a plaintiff settles with a solvent agent, or one from whom the plaintiff could have received full compensation for the entire amount of damages, the foundation of the principal's liability is undermined because a principal is only secondarily liable under respondeat superior. The policy of affording a plaintiff a maximum opportunity to be fully compensated is inapplicable where a plaintiff releases the tortfeasor who is primarily liable and financially capable of making the injured party whole. Vanderpool, 110 Wash.2d at 487, 756 P.2d 111; Glover, 98 Wash.2d at 722, 658 P.2d 1230. Additionally, where a plaintiff settles with an agent, the nonsettling principal's right to contribution from the agent is extinguished. RCW 4.22.060(2). The nonsettling principal is entitled to an offset in the amount paid by the settling agent. RCW 4.22.060(2).
*972 In this case, the court held a reasonableness hearing regarding the settlement reached between Ms. Hogan and Dr. Fealk. The purpose of the hearing was to determine whether the settlement was reasonable in order to establish the hospital's right to a set-off. If the amount paid in settlement is deemed not reasonable, the court has the discretion to offset the judgment in a different, more reasonable amount. RCW 4.22.060(2); Glover, 98 Wash.2d at 716, 658 P.2d 1230. In a reasonableness hearing, the court examines the financial condition of the settling party as a factor in deciding whether the settlement was reasonable. Glover, 98 Wash.2d at 717-18, 658 P.2d 1230. However, this does not mean that the court necessarily determines whether the settling party was solvent as that term is used in Glover. A settlement may be reasonable, without regard to its impact upon the settling party's assets, based on factors such the extent of the injured party's damages and whether liability is disputed. Here, the court determined that Dr. Fealk's settlement was reasonable, even though it did not consider whether he or his group had assets beyond the limits of his insurance policy.
The issue facing this court is whether Dr. Fealk and Physicians Anesthesia Group were solvent at the time of the Hogan settlement. In Adams v. Johnston, 71 Wash.App. 599, 860 P.2d 423 (1993), a defendant hospital sought review of a court's determination that two settlements with its agents were reasonable, and whether the settlements eliminated any further vicarious liability of the hospital. In analyzing the issue of solvency, the Adams court examined the insurance coverage of each settling agent and considered whether any issues existed that might result in a denial of coverage. One defendant carried $10 million in coverage per occurrence, and the other carried $1 million per occurrence. The settlements were in the amounts of $20,000 and $35,000 respectively. The court also considered whether the defendants' balance sheets showed assets above and beyond insurance coverage and found that they did. Id. at 609-10, 860 P.2d 423. Ultimately, based on these factors the court concluded that both defendants were solvent or capable of fully satisfying the plaintiffs' claims, and thus their release operated to release the hospital from its vicarious liability for their acts. Id. at 610, 860 P.2d 423.
Sacred Heart emphasizes that it introduced at the reasonableness hearing uncontroverted evidence that Dr. Fealk and the Physicians Anesthesia Group were solvent. The hospital filed the declarations of Dr. Fealk and Dr. Boubel stating that Dr. Fealk and the anesthesia group were solvent. These declarations do not detail assets and liabilities or provide information normally included in a financial statement, but rather merely assert that the doctor and group, respectively, were solvent exclusive of the insurance policy at the time of the settlement. Because the declarations employ the term "solvent" without further detail or definition, they are not dispositive on this issue. These declarations do not adequately advise the court whether the doctor and the group were solvent to the extent they could fully compensate Ms. Hogan for the entire judgment amount.
Moreover, Sacred Heart's affidavits were filed after the court stated in its letter ruling dated June 25, 1998, that before trial, it had ruled that Ms. Hogan had not released the hospital for its vicarious liability for the acts of Dr. Fealk and would not address the issue again. Consequently, the trial court did not address the solvency issue at the reasonableness hearing. No finding of solvency appears in the order determining reasonableness, nor in the court's oral ruling during that hearing. The record before the trial court does not contain sufficient evidence from which the trial court could have made a finding as to whether Dr. Fealk and the anesthesia group were solvent as related to Ms. Hogan's claim.
Both parties argue that this court should determine the matter by deciding which party failed to meet its burden by proving solvency, and rule against that party. Both parties argue that the burden of proving or disproving solvency belongs to the other party. Ms. Hogan urges the court to adopt a presumption that when a settlement is for policy limits, the court should presume that insurance is the only significant asset and *973 thus the settling party should be deemed solvent. However, this is contrary to our analysis in Adams where we considered what assets in addition to the insurance coverage were available for the settlement of the claims against the agent. Adams, 71 Wash. App. at 610, 860 P.2d 423.
Sacred Heart argues that the issue of solvency is part of the reasonableness hearing and is therefore governed by RCW 4.22.060(1), which provides in relevant part, "[t]he burden of proof regarding the reasonableness of the settlement offer shall be on the party requesting the settlement." Sacred Heart further states that a footnote in Glover reflects the statutory burden of proof rules for reasonableness hearings and dictates it is the plaintiff's burden to prove solvency. The footnote reads in relevant part:
Plaintiffs may protect their right to proceed against the principal in such cases by asking the judge to state on the record that full compensation was unlikely to be obtained from the settling defendant. This fact should be explicitly set out as having been considered in approving the settlement.
Glover, 98 Wash.2d at 724 n. 4, 658 P.2d 1230. Ms. Hogan counters that this note is dicta, and merely reflects a practical suggestion.
We reject the parties' invitation to decide this matter based upon which party had the burden of proof. The problem in this case is not that the party who bore the burden failed to establish its case, but rather that there was no hearing regarding whether the anesthesiologist and his group were solvent at the time of the Hogan settlement. If Dr. Fealk and the anesthesia group were solvent at the time of the settlement, Sacred Heart was released from its vicarious liability for the acts of Dr. Fealk. We remand the matter to the trial court for a hearing to determine the solvency of Dr. Fealk and Physicians Anesthesia Group at the time of the settlement. Dr. Fealk and the anesthesia group were solvent as to the claim of Ms. Hogan if they could fully compensate Ms. Hogan for Dr. Fealk's 60 percent share of Ms. Hogan's total damages. The jury has determined Ms. Hogan's total damages and Dr. Fealk's share of fault. These determinations are binding upon the trial court in any subsequent hearing regarding the solvency of Dr. Fealk and Physicians Anesthesia Group.
Did Sacred Heart waive its right to assert release because it did not assert it until after the jury returned its verdict?
Prior to trial, Ms. Hogan asked the court to rule that Sacred Heart had waived its ability to assert release as a defense. Ms. Hogan's argument was based on two theories: the defense was waived because the hospital failed to affirmatively plead it, or even if the defense was not waived, the release of Dr. Fealk did not release Sacred Heart because he settled for policy limits and the damages greatly exceeded policy limits. The court held that it did not have to decide whether a waiver had occurred due to lack of affirmative pleading. Instead, the court ruled that because the settlement with Dr. Fealk was for policy limits and the damages alleged exceeded those limits, the jury could hear reference to this evidence in opening statements, and all other arguments were of a legal nature and would be reserved for later.
The parties disagree on the effect of the court's pretrial ruling. The hospital contends it left open the ability to argue release later. Ms. Hogan, on the other hand, contends the court's ruling held that the hospital was not released because the damages exceeded Dr. Fealk's policy limits. The court's ruling was not clear. The court allowed Ms. Hogan's evidence to be introduced that Dr. Fealk was the hospital's agent and to later argue it was vicariously liable for his acts. The court did not make an unequivocal pretrial ruling that the hospital was, in fact, vicariously liable. Nor did it make a clear ruling that the defense of release was waived. In the absence of a clear ruling to the contrary, it was reasonable for Sacred Heart to conclude that the release argument was reserved for later.
In contending that the hospital waited too long to raise the issue of release and thus waived the defense, Ms. Hogan relies upon CR 8(c) which lists release as a defense *974 which must be affirmatively pleaded or waived. Both parties admit that at the time of trial, the hospital was aware that Ms. Hogan intended to pursue the hospital under a vicarious liability theory.
A party generally waives affirmative defenses or matters of avoidance that they fail to affirmatively plead, assert in a motion under CR 12(b), or try by the express or implied consent of the parties. Bernsen v. Big Bend Elec. Coop., Inc., 68 Wash.App. 427, 433-34, 842 P.2d 1047 (1993). However, in light of the rule's policy to avoid surprise, affirmative pleading is not always required. Certain defenses are required by CR 8(c) to be pleaded affirmatively to avoid surprise. In light of that policy, federal courts have determined that the affirmative defense requirement is not absolute. Thus, where a failure to plead a defense affirmatively does not affect the substantial rights of the parties, the noncompliance will be considered harmless. Henderson v. Tyrrell, 80 Wash. App. 592, 624, 910 P.2d 522 (1996) (citing Mahoney v. Tingley, 85 Wash.2d 95, 100-01, 529 P.2d 1068 (1975)).
In this case, the hospital argued in its trial brief it was released by Dr. Fealk's settlement with Ms. Hogan. As such, Ms. Hogan cannot reasonably argue that she was surprised that Sacred Heart planned to assert it was released by the settlement. Ms. Hogan contends that she was prejudiced by the hospital's delay in asserting the defense until the presentation of judgment because it had to put on the trial on all issues, whereas if the hospital had moved to dismiss based on release, the trial would have been shortened significantly. This argument is not compelling.
Ms. Hogan bears some responsibility for the problem that gave rise to this assignment of error. She failed to raise the issue of vicarious liability until shortly before trial. Also, the court stated during pretrial motions that the issue of agency could be presented to the jury, and all other arguments were legal in nature and would be reserved for later. The court was not willing to entertain the argument at that time. Because Ms. Hogan did not assert vicarious liability until late in the proceedings, and because the hospital briefed release as a defense in its trial brief, the failure to affirmatively plead release did not affect substantial rights of Ms. Hogan.
The judgment entered by the trial court is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.
SCHULTHEIS, J., and BROWN, J., concur.